said Williams. The petition for the benefit of the act of congress of 1841 [5 Stat. 440] was presented by Williams, and no decree of bankruptcy had been entered against E. Whiting, E. Whiting & Co., or Turpin & Williams, firms of which said Williams was a member. Debts to the amount of $917.12 had been proved against Williams, and to the amount of $1075.10 against E. Whiting & Co., or rather against Williams as a member of that firm. The commissioner requested the instruction of the court upon the question, whether the creditors of the said Williams, individually, and the creditors of the said E. Whiting & Co., shall share pari passu the funds in court, in proportion to their respective claims, or in what manner the funds shall be distributed. The district court ordered, "that the question contained in the accompanying report of the commissioner be adjourned into the circuit court, to be there heard and determined." [Case unreported.] The case was now submitted without argument.

## Case No. 17,703.

### In re WILLIAMS et al.

[1 Lowell, 406; [1] 3 N. B. R. 286 (Quarto. 74).]

District Court. D. Massachusetts. 1869.

BANKRUPTCY—DISSOLVED PARTNERSHIP—INVOLUNTARY PROCEEDINGS — PAYMENT TO PETITIONER—ACTS OF BANKRUPTCY.

1. So long as partnership debts remain due and outstanding a joint petition in bankruptcy

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

may be brought by or against the partners, notwithstanding a dissolution of the partnership.

[Cited in Hunt v. Pooke, Case No. 6,896; Re Sheffer, Id. 12,742.]

[Cited in Monroe v. Upton, 50 N. Y. 597.]

2. If the debtor against whom a petition in bankruptcy is pending is clearly insolvent, he cannot defeat the petition by tendering the petitioning creditor the amount of his debt.

3. Where a conveyance is made with intent to delay one creditor, it is an act of bankruptcy if its necessary effect is to delay all the creditors.

[Cited in Curran v. Munger, Case No. 3,487; Re Redmond, Id. 11,632; Re Marter, Id. 9,143.]

4. Such an act may be declared on either as a fraudulent conveyance or as a concealment.

[5. Cited in Re Redmond, Case No. 11,632, to the point that a conveyance by one partner of individual property, even with intent to defraud firm creditors, or to prefer a firm creditor, will not sustain bankruptcy proceedings against the firm.]

Petition against the defendants as partners under the firm of Granville Williams & Co., alleging that the firm owe more than three hundred dollars, &c., and that the said G. W. & A. W. made a fraudulent conveyance of their property, and did certain other acts within section 39 of the statute [of 1867 (14 Stat. 536)]. The assets of the firm consisted of the machinery, fixtures, and stock of a small paper-mill, and the leasehold estate on which the mill stood, and one credit of about three hundred dollars. On the 29th of March, 1869, the respondents conveyed all this property excepting the credit to their brother, Emory Williams, by a bill of sale, which was executed at about three o'clock, and recorded at five o'clock on that morning. In the course of the same morning they sent for a person to whom they owed a debt of some sixty dollars, and gave him a note for three hundred dollars dated back about a month, with the agreement, which was carried out, that he should sue and attach the only debt due then, which was for about three hundred dollars, as above stated. It appeared that a creditor, one of these petitioners, had threatened to sue them by noon of that day unless they gave him security. It was admitted that the giving the note and causing it to be sued were for the purpose of preventing an attachment by the petitioner, Roberts, but it was said that the real object of thus withdrawing the fund was not to delay the creditors generally, but only Mr. Roberts, and that it was the purpose of the respondents to use the money to pay their workmen.

[This defense, if true, will not avail. The act had a direct and necessary tendency to defeat and delay creditors generally, though aimed at one only. The immediate result was to give the respondents the secret control of this fund, under the guise of an adverse attachment. It is impossible for the court to go beyond that result and determine on doubtful evidence, or any evidence, that the parties intended, when the fund was illegally withdrawn from the ordinary reach of the

law, to apply it more beneficially than the law itself would apply it. This is a fundamental principle of the law of fraudulent conveyances.

[It was urged that the conveyance amounted to a dissolution of the partnership, and that the court has no jurisdiction of a petition filed after a dissolution.] [2]

J. Spaulding, for respondents: (1) The petitioners have no standing in court, because the amount due one of them has been paid into court, and the other has less than two hundred and fifty dollars due him. (2) The conveyance to the brother was for a valuable consideration, and disposed of all the property of the firm, and thus dissolved the partnership, after which they cannot be proceeded against in one petition. (3) There is no sufficient allegation that the fraud was joint, and related to the joint estate. (4) There is no sufficient evidence of a fraudulent intent.

I. J. Cutter, for petitioners.

LOWELL, District Judge. 1. The tender after suit brought will not bar the petition unless the debt is the only one outstanding, or unless all other creditors consent, because the respondents are admitted to be insolvent, and the petitioners would have no right, knowing and relying on the insolvency, to accept payment in full without the consent of all. The court cannot be a party to such a preference. If the insolvency were shown only by the dishonor of negotiable paper, and the respondents professing to be able to pay all their debts, should pay the note which had been lying over, the case might be different.

2. I have often decided that so long as partnership debts are outstanding the petition in bankruptcy may be joint. The words of section 36. that where two or more persons who are partners in trade shall be adjudged bankrupt, &c.. seem to point to an adjudication only while the partnership is still continuing, but when we examine the scope and purpose of the statute we find that a joint proceeding is equally useful and convenient to the proper winding up of partnership affairs, whether there shall have been a dissolution of the firm before the petition is filed, or only one which is operated by the proceeding itself. If the partners after a dissolution of the firm must always proceed separately, upon as many petitions as there are partners, great confusion will arise in marshalling the assets, and great and wholly needless expense in the administration of the bankruptcy. On general principles the firm continues to exist for all purposes necessary to the final liquidation of their affairs. And by analogy to actions at law or in equity as well as from considerations of expediency, it would seem that where partnership affairs are to be wound up. the partners may join or be joined in one petition.

If it were not so the partners would always have it in their power to defeat one of the most important provisions of the law, that the creditors of the firm shall choose the assignee. The decisions, 1 know, were not entirely uniform under the law of 1841; but the Massachusetts doctrine was that there may be a joint petition so long as joint assets remain to be distributed. McDaniel v. King, 5 Cush. 469. And Judge Blatchford has intimated a concurrence in this view which accords with the practice under our present law and with the reason of the case. In re Crockett [Case No. 3,402]. In my opinion a like result must follow if there are joint debts outstanding. It is for the benefit of the joint creditors, so long as any remain, that the proceedings should be joint, because they have the choice of the assignee. Whether there are any joint assets or not may often be disputed, and be the very question which an assignee is needed to try, as would be the case here if all the property had been transferred, instead of nearly all; but the fact of joint creditors whose rights are to be protected, is easy of ascertainment, and when ascertained shows a necessity for joint action. It is a mere question of joinder of parties. And I hold now, as I have held before, that so long as joint debts remain outstanding and unsettled, the proceedings, whether voluntary or involuntary, may be joint. In the present case there is no dispute that there were assets, because the credit of $300 was an outstanding partnership credit at the date of the petition.

[2] [The other objection is that the petition does not distinctly allege that the property and credit in question were vested in the firm. But considering the whole petition, I think it does sufficiently appear that the frauds which are set out as done by the two partners, were done in respect to the partnership property. This is the fair and reasonable construction of the allegations.

[The evidence concerning the bill of sale was not quite so clear as that relating to the attachment. On the one side, it appears to have been made to a brother, and one not engaged in the business of a papermaker. and at an unusual hour; and on the other, that some money was paid to each partner, and a note or memorandum given for the balance. As the allegation concerning the attachment is sustained, it will not be necessary to consider this matter fully. I will only say that by our law a conveyance may be an act of bankruptcy in the grantors, although no fraudulent intent is known to or participated in by the grantee. I have before had occasion to point out the important difference between our statute and the English law in this respect. In our system the title of the assignee relates only to the filing of the petition and not to the act of bankruptcy, ex-

---

[2] [From 3 N. B. R. 286 (Quarto, 74).]

[2] [From 3 N. B. R. 286 (Quarto, 74).]

cepting when that act is the filing of a voluntary petition. It follows that an adjudication of bankruptcy does not, per se, affect the title of the purchaser. And the statute expressly says that if a person is adjudged a bankrupt for any conveyance, etc., the assignee may recover the property, provided the person receiving the payment or conveyance had reasonable cause to believe that a fraud was intended, etc. I do not mean to say that this is, or is not. such a case.

[One other matter arose accidentally. Neither petitioner alone had a debt amounting to two hundred and fifty dollars. In the course of the hearing the respondents paid into court, in pursuance of a tender made on the day before, the amount due to one of the petitioners, and professed a readiness to pay the other. This cannot defeat the petition. The debtors are confessedly insolvent now, and it would not be proper for the petitioners to accept payment in full at the expense of the other creditors. It has been always the law and practice here under the Massachusetts statute, to consider all partial settlements by insolvents as in themselves acts of bankruptcy, and it is well understood that if a single creditor stands out, no arrangement can be made excepting through the bankrupt court. This is so well understood that no case has ever arisen or is likely to arise in this district which will call for an express decision whether such an arrangement, however fairly intended, can be made. In this case the petitioners were well justified in refusing the tender.] [2]

3. I consider that the fair construction of the petition is that the frauds therein set out as having been committed by the two defendants were done by them as partners and in respect to the joint property. This being so, it only remains to inquire whether the case is made out. The bill of sale was made at an unusual hour, and to a brother who was not engaged in paper-making, and it seems altogether probable that it was made on the part of the respondents with intent to withdraw the property from attachment. If so, it was an act of bankruptcy, although the grantee may have bought the property in good faith, and with no knowledge of the fraud, and though his title may be perfectly good as against the assignee in bankruptcy. If the evidence on this point is somewhat contradictory, yet the second specification of fraud is fully made out. It is admitted that the debt due the respondents was assigned over by them to prevent its being attached by the garnishee process. The immediate and necessary result was to delay the respondents' creditors, and it is not possible for a court to look beyond that result and determine on doubtful evidence or any evidence that the parties intended. when the fund was illegally withdrawn from the ordinary reach of the

law, to apply it more beneficially than the law itself would apply it. This is a fundamental rule of the law of fraudulent conveyances.

This act comes fairly within the language of the statute, "or shall conceal or remove any of his property to avoid its being attached," because this means not only the physical removal or concealment of a chattel, but the concealment of the actual title and position of property of whatever kind. O'Neil v. Glover, 5 Gray, 144. It is not declared on in the petition under that clause, but as the procuring, by insolvent debtors, of their property to be taken on legal process, with intent to give a preference, and this requires me to decide whether the respondents were insolvent on the twenty-ninth of March. It must be remembered that the well-settled meaning of insolvency under this act, in the case of a trader. is an inability to pay his debts as they mature, and tried by this test the respondents were insolvent then as they are admitted to be now. This being so, the attachment would effect and must have been intended to effect a preference of the creditor with whom the scheme was made, and of the workmen too, if the intent were what it is said to have been. Adjudication ordered.