In re IDZALL.

(District Court, S. D. Iowa, C. D.    August 24, 1899.)

No. 571.

1. BANKRUPTCY—DISCHARGE—CONCEALMENT OF PROPERTY—EVIDENCE.
    Creditors opposing the discharge of a bankrupt on the ground of his
    having concealed property from his trustee must assume the burden of
    proving such concealment; and it is not sufficient for them to show merely
    his former ownership of certain goods, and that he is not now able to
    account' for the same, but there must be evidence of his present possession
    or control of such property.

2. SAME—FAILURE TO KEEP BOOKS—INTENT.
    Under Bankruptcy Act 1898, § 14b, it is not sufficient to forfeit a bank-
    rupt's right to discharge that he has failed to keep books of account or
    records from which his true condition might be ascertained, but it must
    further be shown that such failure was "with fraudulent intent to conceal
    his true financial condition."

3. SAME—EVIDENCE OF INTENT.
    Where it appeared that a bankrupt had not kept such books or records
    as would be sufficient to disclose his true financial condition, but that his
    system or method of keeping his accounts, incomplete and insufficient as it
    was, had been persisted in by him during the whole time he had been in
    business (about nine years), and had not been in any respect changed after
    the passage of the present bankruptcy act, *held* not sufficient to justify
    the court in inferring that the bankrupt's failure to keep proper books
    was "with fraudulent intent to conceal his true financial condition."

In Bankruptcy.    On application for discharge.

Dudley & Coffin, for opposing creditors.
Read & Read, for bankrupt.

WOOLSON, District Judge.    The grounds of opposition to dis-
charge, as finally presented, are: (1) That the bankrupt knowingly
and fraudulently, while a bankrupt, concealed from his trustee prop-
erty belonging to his estate; and (2) that with fraudulent intent to
conceal his true condition, and in contemplation of bankruptcy, the
bankrupt, since July 1, 1898, has failed to keep books of account or
records from which his true condition might be ascertained.

1. As to such concealment, which must, in this case, be of money
or property, the evidence submitted fails to show either.    The bank-
rupt is unable to account satisfactorily for nearly $1,600 of goods
bought by him after August, 1898.    The opposing creditors do not
claim that such evidence shows any of said goods as being in his
possession, or under his control.    Nor do they claim that he has been
or is withholding from the trustee any money which was received for
such goods.    But they claim that he should have said goods, or their
proceeds, or else be prepared to account for same.    He is not able
to account for them.    It must be borne in mind, however, that we
are not here considering mere carelessness in business matters, how
ever gross may be such carelessness.    The charge is concealment,
and that is an affirmative act, implying something of present posses-
sion or control.    For one cannot, in the sense here intended, conceal
that which has entirely, passed from his possession or control.    If
the goods were sold before institution of bankruptcy proceedings,

then they did not belong to the bankrupt's estate at the time when bankruptcy proceedings were instituted, and are not concealed by the bankrupt. If the proceeds of these goods were paid out by Idzall before such proceedings were instituted, then he has not the money. It never was a part of the estate, and he is not concealing same. His inability to point out where these goods went, and to account for the money received for such as were sold, shows strikingly lax business methods, or, rather, lack of business methods. The burden is on the opposing creditor to prove concealment. This has not been done.

2. The books in which Idzall made his business entries are fragmentary. His "blotter," with its attempted entries of daily sales, is unintelligible, even under Idzall's efforts at explaining same. He kept no cash book, and no merchandise account. His bills of goods purchased were placed "on a hook," he says, in his office, and his method of ascertaining to whom and for what amounts he was owing for goods bought was to consult this hook. As he paid a bill, he took the bill off this hook, and laid it away. He apparently made some effort to keep some sort of "accounts" under different headings. So far as related to the banks with whom he dealt, he has kept a fairly intelligible account in his books. But in his examination Idzall could not tell the gross amount of sales during any month since June, 1898, nor the gross amount of money received on sales for any such month, nor the parties to whom or purposes for which a large part of his moneys were paid out. He could only partially state these facts. He was not "able to keep books," he testifies. Yet he was doing some wholesaling, and was retailing each business day. His brother traveled as salesman for him. Idzall testifies that he never took any list or invoice of the goods which the brother carried on each trip, and that his brother, when starting on each trip, took such goods as he desired, put them in his salesman's trunk, from time to time remitted proceeds, and at end of trip the brother paid over whatever amount he acknowledged to be net proceeds of his sales; that no list or invoice was taken of goods returned at close of trip, and no settlement was ever had with the brother during all the time the brother was making these trips as such salesman. So far as concerns "failure to keep books of account or records from which his true condition might be ascertained," there could scarcely be found a case where, with any attempt whatever to keep books, there was a greater failure in so keeping same that therefrom the true financial condition might be ascertained. But such mere failure does not fill the terms of the present law. The statute of 1867 was not, on this point, reenacted in the present statute. Here there must additionally appear that such failure was "with fraudulent intent to conceal his true financial condition," etc. If such intent can be deduced from mere failure to keep proper books of account, the deduction might easily be here made, so far as merely the actual condition of the books since July 1, 1898, is concerned. And counsel for opposing creditors has strongly urged that therefrom the court must find such fraudulent intent. Without attempting to define the quantum of evidence, or in what lines it must run, to justify finding this fraudulent intent to

conceal the true financial condition, I am unable in this instance to find such intent under the evidence. Idzall had been in business about nine years, when he was adjudicated a bankrupt. During all that period, his attempts at bookkeeping were made in two ledgers (one largely relating to before, the other during and since, 1898) with a blotter in use for daily sales. So far as I can ascertain from the evidence and from an inspection of these books, there seems no change in his attempted keeping of them. Whatever of method existed at any time seems to have been continued without change. No evidence is produced tending in any way to show that his earliest efforts at this bookkeeping were attended with or caused by any attempt at concealing his true financial condition. He seems to have kept merely such accounts as sufficed to inform him of sales and purchases made on credit, where partial payments were to be made, and of the condition of his bank account. But he seems not to have understood that books of account might be so kept as that therefrom the financial condition of the merchant could be obtained at any time; and his examination shows that he did not know what was meant by "bills payable" and "bills receivable," and he kept no accounts concerning them. With this evidence before me as to his attempted bookkeeping methods, and as to its being the same from his starting as a merchant, and the fact that since the present bankruptcy statute went into effect no change in such bookkeeping has been had, I am unable to find that there was fraudulent intent, since the present bankruptcy statute went into effect, to conceal his true financial condition in Idzall's failure to keep books of account which a prudent merchant would have kept, and from which his true financial condition might have been ascertained.

In what has above been said, I desire that I be not misunderstood. This case is decided upon the exceedingly peculiar facts attending it. The lack of business system shown in the evidence could scarcely fail to bring financial disaster in its train. The only wonder is that it was delayed so long. The evidence could scarcely have presented looser business practice, and less regard for that scrutiny and carefulness in business methods which must underlie mercantile success. The decision herein reached finds its basis almost entirely on the fact that, whatever intent might have been inferred from the evidence and inspections of the books relating to matters occurring since July 1, 1898, is negatived or overthrown by the evidence and inspection of the books for seven or eight years prior thereto. This evidence, admitted without objection, compels me to overrule the objections to discharge here presented. The decision herein reached must not be misinterpreted as in any wise justifying failure to keep proper books of account. If the merchant cannot himself keep a set of books, from which at any time his true financial condition can be ascertained, it is his duty to employ some competent person for that purpose. Due regard for his own business safety, if no other reason existed, should induce him to keep a proper set of books. And this practice is now so universal that it may well be regarded with suspicion when a merchant fails to keep such books, and therefore may justly require him to produce some satisfactory reason why he

fails to observe in his business that bookkeeping which is generally regarded as an essential part of safe business methods, and as conserving honesty in business affairs. Let an order be entered overruling the objections to the application for discharge, at costs of opposing creditors, and discharging the bankrupt.