### In re HIRSCH et al.

(District Court, S. D. New York. November 8, 1899.)

1. BANKRUPTCY—OPPOSITION TO DISCHARGE—BURDEN OF PROOF.

Creditors opposing the bankrupt's application for discharge on the ground of his having concealed property from his trustee in bankruptcy must establish the fact by satisfactory and sufficient evidence, or their opposition will be overruled and the discharge granted.

2. SAME—OMITTING PROPERTY FROM SCHEDULE.

It is no ground for refusing a bankrupt's application for discharge that he omitted to list in his schedule a leasehold interest in realty, under a yearly lease, where there is no evidence that the use of the property was worth more than the rent.

3. SAME—JURISDICTION—PARTNERSHIP OR INDIVIDUAL PETITION.

Under Bankruptcy Act 1898, § 5a, providing that a partnership may be adjudged bankrupt "during the continuance of the partnership business, or after its dissolution and before the final settlement thereof," there is no final settlement of the affairs of the firm until its debts are paid, or in some other way extinguished; and hence an adjudication may be made upon the voluntary petition of the partners, alleging that there are firm debts remaining unsatisfied, notwithstanding the fact that there are no assets of the firm to be administered, though an individual petition will also lie.

In Bankruptcy. On opposition to bankrupt's application for discharge.

Benno Loewy and Charles Goldzier, for bankrupts.
E. G. Benedict and L. A. U. Zinke, for opposing creditors.

BROWN, District Judge. The discharge of the above bankrupts is opposed (1) upon the ground that the court has no jurisdiction, where, as in this case, the application is for the adjudication of a partnership and there are no assets; (2) on the ground that assets of the firm were concealed and that various false oaths have been made in regard thereto. Although these objections are mutually exclusive of each other, I shall briefly consider each.

The petition, signed by all the co-partners, was filed on October 27, 1898, stating that the bankrupts composed the firm of S. Hirsch & Sons; that the firm had been dissolved, but that no final settlement of its affairs had been made; that they were insolvent; that the firm had no assets whatever; that Solomon and Seligman Hirsch had no individual debts; that the firm debts (stating them)

amounted to above $15,000, and that Adolph Hirsch owed one individual debt of $47.50 only, and that each of the co-partners has only a small amount of individual property, all of which is claimed to be exempt.

The evidence shows that the firm of S. Hirsch & Co. carried on the fur business in Mercer street, New York, for several years prior to May 7, 1888, when the firm failed. On that day confessions of judgment were entered up in favor of several relatives and their attorney, upon which their leviable stock was sold by the sheriff on execution, and bought in by one Meyers of Philadelphia, who thereafter continued the business at the same place for about a year, having the bankrupts in his employ. The rest of the assets of the firm were conveyed by a general assignment made on May 7, 1888, to an assignee in behalf of the creditors, under which a dividend was paid, and the assignee discharged. About a year after the failure a similar business in furs was started in Greene street by Rosa Hirsch, the wife of Seligman Hirsch, and the mother of Adolph and Solomon, with another son Simon as her partner, under the name of Hirsch & Co. That business has been continued up to the present time. The bankrupts were employed in this business; Adolph and Solomon were evidently its general managers; their mother gave little personal attention to it, and the other partner Simon, was a deaf mute who took but a very subordinate part. The objecting creditors claim that the business of Hirsch & Co. is in reality the business of the old firm of S. Hirsch & Co., that is, of the bankrupts who now seek their discharge. The alleged false oaths occur in the evidence of the bankrupts denying this claim.

1. The evidence is not sufficient to justify the contention of the opposing creditors. The creditors present no evidence on the subject except the evidence of the bankrupts themselves and of Mrs. Hirsch; and while there are more or less minor inconsistencies and contradictions in details, they all agree on the general facts, that prior to the failure of the firm in 1888 Mrs. Hirsch had loaned to S. Hirsch & Co. from time to time moneys amounting to about $5,000, for which the judgment was confessed to her, but upon which she had received nothing; that about a year following the failure the new business was started upon $1,200 capital supplied by her, and $200 supplied by her son Simon; that the bankrupts put no capital in the new concern, and had no interest in it except as employés. The notes upon which the confession of judgment was given were produced and proved, running back to 1884. There is no evidence whatever going to show that the money put into the new concern came from any of the bankrupts. The circumstances indicate strongly that everything belonging to the bankrupts was swept away in the failure of the year before, by the assignment, and the sales on execution. The execution in favor of their own attorney was only about half satisfied, as appears by the sheriff's return. The execution in favor of Mrs. Hirsch was returned nulla bona, and there is no evidence showing that she ever received anything upon her judgment. The circumstance mostly relied on to dis-

credit Mrs. Hirsch's claim as to her advancing $1,200 to start the new business, is her testimony that this came from her savings which she had made from time to time, but which she had not deposited anywhere, but kept about her. Unsatisfactory as this is, even making allowance for the different habits of different people, it is not sufficient to discredit all the testimony in the case, when the other circumstances are considered, and particularly the long period of 11 years during which the new firm has conducted its business in that name, perfectly openly and with the ostensible relation of all the parties fully known, and unchallenged by any one. The principal opposing creditor has during nearly all this time continued his business with the new firm as before, selling them goods, and receiving payment in the name of the new firm, and he must have understood how it was formed. The checks he received were signed by Solomon Hirsch as attorney. He obtained a judgment for his claim in the month following the failure, and he had opportunity by examination in supplementary proceedings 11 years ago, had he chosen to seek it, to ascertain all that was ascertained in these proceedings. Notwithstanding this, no such suggestions or doubts as are now raised were ever mooted. If mere suspicions were to be indulged, I see no reason why the good faith of the present opposition might not be questioned with as much reason as the genuineness of the new firm established in 1889. Unless the new business was started with assets of the bankrupts, drawn from the old concern, or with new funds contributed by them, which the evidence fails to show, there are no grounds in this case for holding any of the property of the new concern to be assets of the bankrupts. The objections founded on the relations of the new firm to the bankrupts are, therefore, overruled.

2. It is further claimed that a lease of the house in which Seligman Hirsch and his family live, at a rental of $50 a month, should have been stated in the schedules. The lease was only for a year, and there is no evidence that the premises were worth more than the rent. No reason appears for holding that the omission to state this tenancy was either intentional or fraudulent.

3. Finding then that there were no assets of the firm, the question is presented whether the adjudication and discharge of the bankrupts in a joint proceeding by them as partners can be sustained under the act of 1898. Under the former act of 1867, it was ruled in this district that a firm proceeding should not be sustained where there were no assets at the time of the petition. This was based in part on the peculiar wording of the act of 1867. In re Crockett, 2 Ben. 514, Fed. Cas. No. 3,402; In re Hartough, 3 N. B. R. 422, Fed. Cas. No. 6,164; Hopkins v. Carpenter, 18 N. B. R. 339, Fed. Cas. No. 6,686. In other districts there were divers adjudications, the majority being in favor of upholding the joint proceedings. In re Williams, 1 Low. 406, Fed. Cas. No. 17,703; Hunt v. Pooke, 5 N. B. R. 161, Fed. Cas. No. 6,896; In re Noonan, 10 N. B. R. 330, Fed. Cas. No. 10,292; In re Waite, 1 N. B. R. 373, 377, Fed. Cas. No. 17,044.

The language used in the present act seems to me to have been designed to put an end to this doubt, since it authorizes a part-

nership to be adjudged bankrupt "after its dissolution and before the final settlement thereof." Section 5a. The petition alleges the fact of dissolution, and that there has been no final settlement of the firm affairs. The proof shows the existence of debts to a considerable amount unpaid; and incontestably, it seems to me, there is no "final settlement" of the business of a firm, until its debts are paid or in some way extinguished, by the statute of limitations, or otherwise. The decisions to this effect under the present law seem to me to be fully justified by the terms of the act of 1898 (In re Levy [D. C.] 95 Fed. 812; In re Altman [D. C.] 95 Fed. 263, 264, last sentence; Id., 1 Nat. Bankr. News, 358; In re Freund, 1 Nat. Bankr. News, 105); although in my own judgment a partner may at his option proceed upon his individual petition for his own adjudication and discharge without reference to the other partners, as under the act of 1867 (In re Abbe, 2 N. B. R. 75, Fed. Cas. No. 4; In re Marks, Fed. Cas. No. 9,094; Crompton v. Conkling, 15 N. B. R. 417, 420, Fed. Cas. No. 3,408; Id., 9 Ben. 225, Fed. Cas. No. 3,407), where all are insolvent and there are no firm assets whatever, inasmuch as partnership debts are all several, as well as joint. In re Meyers (D. C.) 96 Fed. 408; In re Laughlin, Id. 589; In re Winkins, 2 N. B. R. 349, Fed. Cas. No. 17,875; In re Downing, 3 N. B. R. 748, Fed. Cas. No. 4,044. There is nothing in the present act or rules necessarily excluding this course in such a case; it prejudices no one; and it is recommended by its simplicity and convenience in often avoiding the useless burden of proceeding adversely and by publication against an insolvent partner who may be inimical, or whose whereabouts may be unknown, and whose presence in the cause, real or constructive, would not be of the least benefit to creditors.

The specifications are not sustained, and the discharge of the bankrupts should be granted.