## In re JACOBS.

(District Court, D. New Jersey. March 27, 1906.)

1. BANKRUPTCY—OBJECTIONS TO DISCHARGE—SUFFICIENCY OF PROOF.

Evidence considered on objections to a bankrupt's discharge, and *held* insufficient to sustain the burden of proof resting upon the objecting creditor to establish his allegation of a concealment of property, based on a conveyance of heavily incumbered property by the bankrupt to his sons some three years prior to his bankruptcy; the conveyance having been duly recorded, and it not appearing that the bankrupt retained any beneficial interest in the property directly or indirectly.

2. SAME—CONCEALMENT OF PROPERTY.

A mere attempt to hinder and delay creditors, by a conveyance of property made some years before the bankruptcy of the grantor, is not sufficient to sustain an objection to his discharge based on the ground of his concealment of the property.

In Bankruptcy. On objections to bankrupt's discharge.

Edwin C. Long, for objecting creditor.
J. Kearny Rice, for bankrupt.

CROSS, District Judge. The objecting creditor Conrad Bogendoerfer filed four specifications of objections to the discharge of the above-named bankrupt, whereupon the matter was referred to a referee, as special master, to take testimony and report his conclusions thereon to the court. Briefly stated, the objections are as follows: (1) That the bankrupt, with intent to defraud his creditors, knowingly, fraudulently, and willfully concealed, while a bankrupt, certain specified real estate in the city of New York; the same having been conveyed by him to his three sons for a nominal consideration, in secret trust for the benefit of himself, for the purpose of defeating the collection of his just debts, and of saving the said property and protecting the same from his creditors. (2) Because the bankrupt fraudulently and willfully omitted to include, in his schedule of assets, the above real estate held in trust for him and for his benefit by his said three sons. (3) Because the bankrupt made a false oath in this proceeding, in that he knowingly, fraudulently, and willfully omitted from schedule B, filed with his petition praying to be adjudicated a bankrupt, the real property described in specification 1. (4) That the bankrupt failed to answer proper and material questions propounded to him, and approved by the court at his examination before the referee in bankruptcy, and that the answers made by said bankrupt to said questions were evasive, indefinite, and unresponsive.

The burden of sustaining these objections is upon the creditor objecting to the discharge. The allegations contained in the specifications must be proved by the weight of the evidence. In re Logan (D. C.) 102 Fed. 876; In re Holman (D. C.) 92 Fed. 512; In re

Hixon (D. C.) 93 Fed. 440; In re Idzall (D. C.) 96 Fed. 314; In re Hirsch (D. C.) 97 Fed. 571; In re Wetmore (D. C.) 99 Fed. 703; In re McGurn (D. C.) 102 Fed. 743. The referee, acting as special master, took such testimony as was produced before him, and has reported to the court that the objections are not sustained by the proofs. The first three specifications are based substantially upon the same transaction, and if one fails they all fail. Therefore only one of them, and that the first, will be considered. The last, which relates to the alleged failure of the bankrupt to answer proper and material questions propounded to him upon his examination, was not pressed upon the argument, and I find nothing in the evidence before me to sustain it. This objection therefore is overruled as unsupported. The others relate in one form or another to a transaction of the bankrupt in 1902, about three years before this proceeding was begun, whereby he conveyed to his three sons certain real estate situated on Third avenue in the city of New York, for an expressed consideration of $1, which conveyance was made just after a suit had been commenced against him for damages, and which suit, subsequently, in January, 1905, ripened into a judgment of $10,000 and upwards. The property at the time of the conveyance was heavily mortgaged, but the bankrupt had an equity of redemption therein worth probably from $10,000 to $12,000. In explanation of the transaction, he says that he had no other property; that he was unable to keep up the interest on the mortgage; and that he conveyed it to his sons for a cash consideration of $500, with which he paid one of his creditors, and upon the further understanding that they would pay the balance of his creditors, including themselves. There is no evidence whatever showing that the property was held by them in trust for him, or for his benefit, or that he thereafter in any way dealt with said property as his own, or derived any benefit therefrom, either directly or indirectly. It may well be that the interest, taxes, insurance, repairs, and other possible charges, made it onerous, if not impossible, for the bankrupt longer to carry the property. As already stated, he swears that he had no property other than this at the time, and that he had become impoverished from expenses incurred by the exceedingly severe illness of his wife, covering a period of many years. It is true that the evidence may engender a suspicion that the property was conveyed to his sons for the purpose of delaying, hindering, and defrauding his creditors, and more especially the one who had just instituted a suit against him on a claim for damages, but it may also be that his account of the transaction is true, and that the conveyance was made for the reasons given by him. His testimony is altogether unimpeached and uncontradicted. The case cannot be decided against him upon mere suspicion, and the objecting creditor has utterly failed to sustain his objection by the weight of the evidence.

The case of In re Dauchy (D. C.) 122 Fed. 688, is instructive at this point, and makes plain the distinction laid down in all the cases that I have examined, between transfers merely colorable and where the bankrupt continues to control, possess, and enjoy his property, and those where such control, possession, and enjoyment ceased upon

the transfer. This is the ground upon which In re Bemis (D. C.) 104 Fed. 672, cited by counsel for the objecting creditor, turned. The transfer there considered was so transparently fraudulent that the court could not do otherwise than hold that the bankrupt had concealed his property. The testimony showed clearly that it was his property, notwithstanding the transfer.

In each of the following cases, substantially the same objection filed in this case was overruled under facts somewhat like the present. In re Keefer (D. C.) 135 Fed. 885; In re Howell (D. C.) 105 Fed. 594; In re Crist (D. C.) 116 Fed. 1007; In re Cornell (D. C.) 97 Fed. 29; In re Fitchard (D. C.) 103 Fed. 742, 745; In re Goodale et al. (D. C.) 109 Fed. 783; In re Gaylord, 112 Fed. 668, 50 C. C. A. 415; Fields v. Karter, 115 Fed. 950, 53 C. C. A. 442; Loveland on Bankruptcy, p. 656.

An examination of the foregoing cases shows clearly that there must be a concealment of assets from the trustee. A mere attempt to hinder and delay creditors is not sufficient to support an objection to a discharge. In the case at bar there was no substantial concealment. The deed transferring the property in question was recorded and the details of the transaction were fully disclosed by the bankrupt on his examination. Fields v. Karter, supra.

In view of the facts already detailed, and especially in the absence of any convincing evidence of any trust in the property in favor of the bankrupt, or of his having derived any benefit therefrom, either directly or indirectly, or of his having dealt therewith as his own since the transfer, or of his having made any false oath, the objections of the creditor will be overruled, the master's report approved, and the bankrupt discharged.