## Case No. 3,407.

CROMPTON et al. v. CONKLING.

[9 Ben. 225.][1]

District Court, S. D. New York. Oct. 23, 1877.

BANKRUPTCY—PARTNERSHIP—ASSETS—DISCHARGE.

1. It is necessary that all the members of a copartnership should be adjudged bankrupt, in order to enable an assignee to deal with the joint property of the firm, and in order to enable a discharge of one of the members of the firm to operate to discharge him from the debts of the firm.

[Followed in Re Plumb, Case No. 11,231.]

2. C. and H., being copartners, made a promissory note in their firm name. Afterwards, a petition in involuntary bankruptcy was filed against C. alone, and he received a discharge. Afterwards, in a suit on the note against C. and H., C., being alone served with process, set up, as a defence, such discharge. The court charged the jury, that if, when the petition was filed against C., there was no property of his firm which continued to be its copartnership property, the discharge of C. was a discharge of the note, but if there was such copartnership property at that time the discharge of C. did not discharge the note. Held, that the charge was correct.

3. A person who receives, on loan, from a bankrupt, after the petition is filed and before adjudication, moneys of the bankrupt, is liable to respond therefor to the assignee, after his appointment.

[At law. Action by John Crompton and John C. Dickinson, as assignees in bankruptcy of Almon Miller & Co., against Gurdon Conkling, Jr., and Harriet Goetschius, to recover upon two promissory notes made by the defendants, composing the firm of G. Conkling, Jr., & Co., to the bankrupts. There was a judgment against the defendant Conkling (Case No. 3,408), and he now moves for a new trial.]

F. N. Bangs and F. C. Bowman, for plaintiffs.

W. A. Beach and H. E. Farnsworth, for defendant.

BLATCHFORD, District Judge. On the 23d of November, 1872, the bankrupts, composing the firm of A. Miller & Co., were adjudged such, on a petition filed January 28th, 1870. The usual assignment was made to the plaintiffs December 30th, 1872, assigning to them all the property in which the bankrupts were interested, or which they were entitled to have, on the 28th of January, 1870. This suit is brought on promissory notes, made by the firm of G. Conkling, Jr., & Co., a firm composed of the defendants, each dated July 16th, 1870, and payable, one five months, and the other six months, after date, to the order of A. Miller & Co., one for $3,602.08, and the other for $3,622.50. The complaint alleges, in respect to each note, that, on the 16th of July, 1870, the defendants, being copartners under the firm-name of G. Conkling, Jr., & Co., and being indebted to the said firm of A. Miller & Co. in the amounts of the respective notes, made the notes. Conkling alone was served in the suit. He answered, and the case as to him was tried, and resulted in a verdict for the plaintiffs for the full amount of the notes, with interest. He now moves for a new trial, on the ground of alleged errors committed by the court on the trial, in its rulings, and on the ground that the verdict was against the weight of the evidence.

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

The principal question is as to the effect of a discharge in bankruptcy obtained by Conkling. On the 3d of June, 1871, a petition in involuntary bankruptcy was filed in this court against Conkling, and, on the 4th of April, 1872, a discharge was granted to him by this court from all debts and claims "provable against his estate," which existed on the 3d of June, 1871. Harriet Goetschius, the copartner of Conkling in the firm of G. Conkling, Jr., & Co., was the wife of the bankrupt, Goetschius. The proceeding in bankruptcy against Conkling was against him individually and did not include Mrs. Goetschius, and was not a proceeding against the firm or against the property of the firm. The court charged the jury, that if, on the 3d of June, 1871, there was no property of the firm of G. Conkling, Jr., & Co. which continued to be its copartnership property, then the discharge of Conkling was a discharge of the notes in suit, but, if there was such copartnership property at that time, the discharge of Conkling did not discharge the notes in suit. The statute in force when this discharge was granted—Act March 2, 1867 (14 Stat. 533, § 34; now section 5119, Rev. St.)—provided, that a discharge duly granted should release the bankrupt "from all debts, claims, liabilities, and demands, which were or might have been proved against his estate in bankruptcy." It is contended, for the defendant, that such charge of the court was erroneous, and that the court also erred in not directing the jury to find a verdict for the defendant, on the said discharge in bankruptcy. The view urged is, that it is not necessary that both of the members of the firm of G. Conkling, Jr., & Co. should have been adjudged bankrupt, in order to have enabled an assignee in bankruptcy to deal with the joint stock of the firm, or in order to make the discharge of Conkling operate to discharge him from the debts of the firm. The case of Wilkins v. Davis [Case No. 17,664] sustains that view, but the weight of authority under the present bankruptcy statute is, I think, against that view.

In Re Little [Case No. 8,390], it was held by this court, in the case of a copartnership consisting of two persons, where there were copartnership debts and copartnership assets, that neither partner could be discharged from the firm debts, unless both of the partners were made parties to the bankruptcy proceeding. This view has been concurred in by the district court for South Carolina, in Re Grady [Id. 5,654]; by the district court for North Carolina, in Hudgins v. Lane [Id. 6,827]; and by the circuit court for the eastern district of Wisconsin, in Re Noonan [Id. 10,292]. It appears not to be concurred in by the district court for the western district of Wisconsin, in Re Jewett [Id. 7,306]. The case of In re Abbe [Id. 4], in the district court for New Jersey, holds only, that where there are no assets of a copartnership to be administered, a member of it may, upon his

individual petition, be discharged from all his debts, copartnership as well as individual.

In Nutting v. Ashcroft, 101 Mass. 300, under the insolvency law of Massachusetts, on which the bankruptcy statute of the United States was framed, it was held, that the record of insolvency proceedings ought to show that they were instituted against a firm as well as against an individual who was a member of it, and that the assignment in insolvency ought in terms to convey the property of the firm as well as the property of the individual, or otherwise the partnership affairs would not be included in the proceedings, and the assignee of the individual would acquire, by the assignment to him, no title to the property of the firm.

But I regard the question as substantially disposed of by the decision of the supreme court in Amsinck v. Bean, 22 Wall. [89 U. S.] 395. In that case it was held, that where an individual member of a copartnership is adjudged a bankrupt, without any adjudication against the copartnership, or against the other partner or partners of which the copartnership is composed, the assignee of the individual cannot administer the estate of the copartnership, or call third parties to an account for partnership property. This being so, it is difficult to see how the estate of the firm can be in the bankruptcy court in any such wise as to make a discharge of the individual operative in respect to the debts of the firm, provided there are assets of the firm when the bankruptcy proceedings are instituted. Although the statute declares that the discharge shall release the bankrupt from all debts "which were or might have been proved against his estate in bankruptcy," yet if there was an estate of the firm of which he was a member, when the proceedings were commenced, and such estate is not in bankruptcy to be administered therein, no debts can be proved against the estate of the firm, and his estate in the firm is not in bankruptcy. Persons who have claims against the firm may prove such claims against him as an individual, because he is individually liable for the debts of the firm; but such claims are provable and proved against his individual estate alone, which alone is in bankruptcy, and are not provable or proved against his estate in the firm, which is not in bankruptcy, and is, therefore, not "his estate in bankruptcy." Consequently, such claims, if claims against the firm, are not released by his discharge in bankruptcy. This view is necessary in order to carry into effect all parts of the statute, on the same harmonious plan.

The case does not show that the defendant took any exception to the foregoing charge of the court, or made any request to the court to charge the jury in a particular manner on the foregoing question; but, inasmuch as the case shows, that at the close of the trial he requested the court to direct a verdict for the defendant, on the discharge in bank-

ruptcy of the defendant, and that the court denied the motion, and that the defendant excepted, I regard the case as raising the foregoing question for review, on this motion for a new trial.

At the trial the plaintiffs introduced in evidence the assignment in bankruptcy to them and the two notes, and proved how much was due on the notes, and rested their case. Thereupon the defendant requested the court to direct a verdict for the defendant, on the ground that the notes were made after the 28th of January, 1870. The court allowed the plaintiffs to give further testimony, against the objection of the defendant, (as the case states it), that evidence to show that there was an indebtedness before January 28th, 1870, would be alleging a new cause of action. The defendant excepted. The further testimony given was not testimony to show that there was an indebtedness of the defendant to A. Miller & Co. or to the plaintiffs, before January 28th, 1870, but was testimony to show that, although the notes were dated after the 28th of January, 1870, and were notes payable to the order of A. Miller & Co., there was really an indebtedness of G. Conkling, Jr., & Co., to A. Miller & Co., as alleged in the complaint, represented by the notes, which indebtedness the plaintiffs were entitled to enforce by this suit on the notes. It appeared, that while the bankruptcy proceedings were pending, and before the adjudication, the assets of A. Miller & Co. were in the hands of the bankrupt, Goetschius, for nearly three years, and that during that interval he loaned, out of such assets, to G. Conkling, Jr., & Co., the money represented by the two notes. This was the further evidence that was allowed. It was not evidence as to any indebtedness before January 28th, 1870. It was evidence strictly to prove the allegation of the complaint, that G. Conkling, Jr., & Co., being indebted to A. Miller & Co., made the notes, and was not evidence to prove any new cause of action. G. Conkling, Jr., & Co., having received on loan from the bankrupt, Goetschius, after the petition in bankruptcy was filed, and before the adjudication, moneys of A. Miller & Co., the title of the plaintiffs to recover such moneys, on their subsequent appointment as assignees and the assignment to them, is clear. The case of Hampton v. Rouse, 22 Wall. [89 U. S.] 263, shows that, prior to an assignment in bankruptcy, the title to the debtor's property remains in him, although the assignment, when made, relates back to the commencement of the proceedings. The evidence given on the trial satisfactorily showed that the money loaned by Goetschius to G. Conkling, Jr., & Co., was the proceeds of property which was assets of A. Miller & Co. when the bankruptcy proceedings were commenced. In addition to this, the giving of the notes to the order of A. Miller & Co., when all that there was of A. Miller & Co., after the

petition in bankruptcy was filed, was a dealing by Goetschius with what were their assets when such petition was filed, was an acknowledgment by G. Conkling, Jr., & Co., which binds the members of that firm, that the moneys loaned them, and the consideration of the indebtedness created by the notes, were moneys which were assets of A. Miller & Co. when the petition in bankruptcy was filed. The case does not show that the defendant requested, on the trial, that the question as to whether the moneys loaned by Goetschius to G. Conkling, Jr., & Co., were property or the proceeds of property which belonged to A. Miller & Co. when the petition in bankruptcy was filed, should be submitted to the jury.

There was nothing in the proof of debt by Vandewater Smith, on the notes, in the bankruptcy case against Conkling, which could affect the rights of the plaintiffs. On the evidence, Smith never owned the notes, and his attempted dealing with them could not prejudice the plaintiffs.

But I think a new trial must be granted, on the ground that the verdict was against the weight of the evidence. The jury were not, I think, warranted in finding, on the evidence, that there was any firm property of G. Conkling, Jr., & Co., remaining in existence when the petition in bankruptcy was filed against the defendant, Conkling.