In re MERCUR.

LUDOWICI ROOFING TILE CO. v. PENNSYLVANIA INST. FOR INSTRUCTION OF THE BLIND et al.

(Circuit Court of Appeals, Third Circuit. May 12, 1903.)

Nos. 27, 28, 29.

1. BANKRUPTCY—PARTNERSHIP—ADJUDICATION AGAINST INDIVIDUAL MEMBERS—AUTHORITY OF TRUSTEE.
    Where all the members of a firm are adjudicated bankrupts, but there has been no adjudication against the firm, the trustee appointed in the individual cases has no authority to interfere with firm assets, though all the cases were instituted simultaneously by the same creditor, and the same trustee appointed for all the partners.

2. SAME—PROCEEDINGS—AMENDMENTS.
    Amendments may be made in bankruptcy proceedings at any stage thereof, if otherwise authorized, regardless of the time that has elapsed.

8. SAME—INDIVIDUAL PROCEEDINGS—EFFECT AS TO FIRM—AMENDMENT—ADJUDICATION AGAINST FIRM.
    In the contemplation of the bankrupt act of 1898 (Act July 1, 1898, 30 Stat. 544, c. 541 [U. S. Comp. St. 1901, p. 3418]), a partnership is a distinct entity, which requires a petition specifically directed against it, alleging an act of bankruptcy, in which it is expressly involved, and resulting in an adjudication against the partnership itself, irrespective of and in addition to any that may be made against the individual members; and simultaneous proceedings against the individual members of a partnership do not necessarily bring the partnership into court, so as to authorize an amendment calling for an adjudication against it.

4. SAME—PARTNERS—INDIVIDUAL PROCEEDINGS—AMENDMENT—ADJUDICATION AGAINST FIRM.
    In bankruptcy proceedings simultaneously instituted by the same creditor against the individual members of a firm, separate petitions were

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. §§ 229, 428.

filed against each member, and the bankruptcy acts charged were individual, and did not touch the firm, with the exception of a firm assignment for the benefit of creditors, set up in an amended petition as an additional ground for the adjudication against the members. The trustee was appointed for the individual members only; being chosen by the combined vote of individual and firm creditors, instead of by the latter alone, as required by Bankr. Act 1898, § 5b, Act July 1, 1898, 30 Stat. 547, c. 541 [U. S. Comp. St. 1901, p. 3424], in partnership cases. The bankrupts objected, though unsuccessfully, to participation in the proceedings by firm creditors; and the firm creditors objected, likewise unsuccessfully, to the discharge of the bankrupts, on the ground that there were firm assets which had not been administered. Subsequently a firm creditor petitioned to have the firm adjudicated a bankrupt nunc pro tunc as of the date of the adjudication against the members, and to have the firm assets thus brought in. *Held,* that the proceedings were individual, and the amendment could not be allowed; the only remedy against the firm being to file a new and separate petition against it.

**5. SAME—FIRM ASSETS.**

Bankr. Act 1898, § 5h, Act July 1, 1898, 30 Stat. 547, c. 541 [U. S. Comp. St. 1901, p. 3424], providing that "where one, or more, but not all of the members of a partnership, is adjudicated a bankrupt, the firm assets shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudicated," being exceptional and negative, cannot be construed into affirmative authority for the administration of the firm assets in individual proceedings against all the partners, but rather recognizes the absence of any inherent necessity for throwing a firm into bankruptcy merely because its members have been adjudicated.

Appeals from the District and the Circuit Courts of the United States for the Eastern District of Pennsylvania.

M. Hampton Todd, for appellants.

Alex Simpson, Jr., for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. Prior to December 20, 1898, James Watts Mercur and Ulysses Mercur were copartners, carrying on the business of building contractors, under the firm name of J. W. Mercur & Co., and at that time were, among other things, engaged in erecting a building for the Pennsylvania Institution for Instruction of the Blind. Various payments were made, during the course of construction, to the contractors, and some time prior to the date mentioned, a sum in excess of $37,000 became due, and remained due, as the final installment under the contract, from the said institution to the said contractors. On November 28, 1898, the firm of J. W. Mercur & Co. delivered to S. C. Purvis & Co. an order on the Pennsylvania Institution for Instruction of the Blind, for the payment of $8,000 to them out of this final installment, payable under its contract with J. W. Mercur & Co., for the erection of its building. Notice of this assignment was duly given to the institution. By a similar assignment, dated December 12, 1898, the sum of $3,413.76 was directed to be paid to R. A. and J. J. Williams out of the same fund, and of this assignment, due notice was also given. On December 20, 1898, James Watts Mercur and Ulysses Mercur, individually and as partners, trading as J. W. Mercur & Co., made a voluntary assignment for the benefit of creditors, to Ezekiel Hunn, Jr., who qualified and

122 F.—25

entered upon his duties.   On March 24, 1899, separate petitions were
presented to the court, praying that each of the partners be declared
bankrupts, and on July 31, 1899, an adjudication of bankruptcy was
made against each of the partners composing the firm of J. W. Mercur
& Co.   On June 1, 1899, the Vulcanite Paving Company, and other
creditors of the firm of J. W. Mercur & Co., presented their petitions
for leave to join in the original proceedings against the individual
partners.   The granting of these petitions was resisted by the alleged
bankrupts, on the ground that they were partnership and not indi-
vidual creditors.   This objection was overruled by the District Court,
on the ground that the creditors of the partnership are also creditors
of each individual member, and have a right to petition against him
as well as against the firm, and adding:

"How far the partnership creditors may be entitled to share in the distri-
bution of the separate property of each member, is a distinct question, which
can only be determined hereafter, when the estates come to be marshalled."

On December 20, 1899, after hearing, the court ordered the dis-
charge of each of the bankrupts "from all debts and claims which are
made provable by said acts against his estate, and which existed on
the 24th day of March, A. D. 1899."   On January 17, 1900, Charles
F. Gummey, trustee in bankruptcy of each of the bankrupts, obtained
a rule on Ezekiel Hunn, Jr., assignee for the benefit of creditors, to
show cause why he should not turn over the property in his hands
(which included the said fund of $37,000 and upwards, due the said
firm as aforesaid), both firm and individual, to the said Gummey, as
trustee in bankruptcy.   On December 11, 1901, the Vulcanite Paving
Company, as a creditor of the firm of J. W. Mercur & Co., presented
its petition for an adjudication of bankruptcy of the firm of J. W.
Mercur & Co., nunc pro tunc.   On March 15, 1900, a bill in equity
was filed by the Ludowici Tile Company against the Pennsylvania
Institution for the Instruction of the Blind, and against the partner-
ship and individual partners of J. W. Mercur & Co., against Ezekiel
Hunn, Jr., assignee for creditors, and Charles F. Gummey, trustee in
bankruptcy of J. Watts Mercur and Ulysses Mercur, respectively,
praying for an adjudication of their rights as creditors of Mercur &
Co., and that the said Pennsylvania Institution be restrained from pay-
ing to Ezekiel Hunn, Jr., assignee as aforesaid, out of the said sum due
from the Pennsylvania Institution, any part of the sum of $7,000 as-
signed by said Mercer & Co. to the complainant, and that the said
Pennsylvania Institution be ordered to deliver unto the complainant
the said sum under the assignment to it of February 7, 1898.
The rule on Hunn, to deliver the assets of the firm to the trustee in
bankruptcy, and the petition for adjudication of bankruptcy against
the firm, nunc pro tunc, and the suit in equity just mentioned, of the
tile company against the Pennsylvania Institution et al., were argued
together before Judge Archbald, who made an order, discharging the
rule on Hunn, as to firm assets, refusing the petition of the Vulcanite
Paving Company, as to an adjudication of the firm as bankrupts, and
in the tile company's case in equity, awarding the payment, among
others, of the orders in favor of S. G. Purvis & Co. and R. A. and J. J.

Williams, and the balance of the fund to Hunn, as assignee for the benefit of the firm creditors. (C. C.) 116 Fed. 661.

The principal question involved in the appeal of Charles F. Gummey, trustee in bankruptcy of James Watts Mercur and Ulysses Mercur, respectively, in the equity case, is admittedly determined by the court below in the bankruptcy matters, and as this court, upon the appeals from the orders made by the court below in these matters, agrees with and adopts the opinion, reasoning and decision of the District Court (116 Fed. 655), it will be only necessary to recite that opinion as its own. It is as follows:

"On December 20, 1898, James Watts Mercur and Ulysses Mercur, his brother, both individually and as partners, trading as J. W. Mercur & Co., made a voluntary assignment for the benefit of creditors to Ezekiel Hunn, Jr., who qualified and entered upon his duties in accordance with the state law. Within four months afterwards, on March 24, 1899, proceedings were instituted in this court to have the two Mercurs declared bankrupts, and on July 31, following, an adjudication was made against them, and subsequently Chas. Francis Gummey was appointed their trustee. A rule was thereupon taken on the assignee to turn over the property in his hands, both firm and individual. This he resists, and the question is whether he can be compelled to do so. Taking the case as it stood when the rule was entered, it is clear that, so far as firm property is concerned, it cannot be maintained. The proceedings against the two bankrupts, as we shall see more fully later, while begun and carried on simultaneously, are distinct and several.

"There has been no adjudication against the firm, and the trustee was not appointed to represent it, but only the two members who happened to compose it in their separate and individual capacity. Under such circumstances the trustee has no authority to demand or interfere with the firm assets. This is settled by the case of Amsinck v. Bean, 22 Wall. 395, 22 L. Ed. 801, where it was held that, while the assignee (trustee) in bankruptcy of the joint stock and property of a partnership is required by the statute to administer the separate estate of the individual members as well as that of the firm, there is no reciprocal regulation with regard to the estate of the partnership where an individual member of it has alone been adjudged a bankrupt. In conformity with this it was also decided that where one of two partners had transferred to the other all his interest in the firm assets to be applied to the payment of the firm debts, upon the subsequent bankruptcy of the liquidating partner, his assignee (trustee) was not entitled to the firm assets so transferred to him as against an assignment for the benefit of creditors of the firm under the state law. In re Shepard, 3 Ben. 347, Fed. Cas. No. 12,754. These cases arose and were decided, it is true, under the bankruptcy act of 1867 (Act March 2, 1867, 14 Stat. 517, c. 176), but they are equally applicable to the one now in force. The decision of this court, in Re Stokes, 6 Am. Bankr. R. 262, 106 Fed. 312, is in entire harmony with this ruling, the facts being materially different. The firm in that case had been thrown into bankruptcy, on the strength of which an order was made on the assignee for the benefit of creditors of the individual partners to turn over to the trustee of the firm the individual property in his hands, to be administered by the trustee along with that of the partnership. This is the express requirement of the bankruptcy act, § 5 (Act July 1, 1898, 30 Stat. 547, c. 541 [U. S. Comp. St. 1901, p. 3424]), and the propriety of the order cannot be questioned. But, as is pointed out in Amsink v. Bean, supra, there is no such corresponding provision where the converse is the case, and the members of the firm, as here, have alone been brought into court. To remedy this obvious difficulty, on December 11th last, just prior to the argument of the present rule, a petition was presented by the Vulcanite Paving Company, a creditor of the firm of J. W. Mercur & Co., to have it adjudicated nunc pro tunc as of the date of the original adjudication of the two members. The right to make such an order is contested, both by the bankrupts themselves as well as by the as-

signee of the firm, and by other creditors. The question is practically one of first impression, and is not free from difficulty.

"As a preliminary matter, it may be observed that there is no such finality to the proceedings, that we cannot even at this late stage revise and amend them if otherwise authorized. The general right to amend, regardless of the time which has elapsed, is abundantly sustained by the authorities. Sandusky v. Bank, 23 Wall. 289, 23 L. Ed. 155; In re Ives, 51 C. C. A. 541, 113 Fed. 911; In re Henschel (D. C.) 114 Fed. 969. But to do so it is plain there must be in the record as it stands the substance of that which is asked for; the right to amend can go no further than to bring forward and make effective that which is in some shape already there. The question, therefore, is whether the amendment which is now applied for is justified by the proceedings which have so far been taken, and to judge of this we must look into them somewhat more closely. As already seen, they were begun on March 24, 1899, at the instance of the Charter National Bank of Media as the holder of the joint note of James Watts Mercur and Ulysses Mercur, his brother, and another of James Watts Mercur individually, by two several petitions, one against the one bankrupt and the other against the other. It was in each case charged that the alleged bankrupts, while insolvent, had joined—the one with the other—in conveying away a certain farm owned by the two together, with intent to hinder, delay and defraud creditors, and in the case of James Watts Mercur, additionally, that, while insolvent, he had suffered a creditor to obtain a preference by the entry of a confession of judgment against him. The bankrupts opposed the proceedings, contending that they had not been properly instituted because there were more than twelve creditors, a list of some fourteen being given in the one case and thirty-six in the other, but several other creditors came in on notice sufficient to make up the required number. Among these were several creditors of J. W. Mercur & Co. not given in the list referred to, whose right to participate was resisted by the bankrupts on the ground that they were firm and not individual creditors, but was allowed by the court, and an adjudication finally entered. Prior to this, however, proof having been made at the hearing of the assignment for the benefit of creditors already referred to, at the suggestion of the court, this was charged as a further act of bankruptcy, in addition to that set out in the original petition. Subsequently each of the bankrupts applied for his discharge, which was in turn resisted, among others, by S. G. Purvis & Co., who, as creditors of the firm of J. W. Mercur & Co., objected to a discharge from the partnership debts on the ground that the proceedings were individual in scope, and did not in any way concern the firm assets; but, without stopping to discuss it, a discharge was granted by the court December 20, 1899, to each of the bankrupts in the usual terms. Meanwhile, at the meeting of creditors, Chas. Francis Gummcy was appointed trustee of the bankrupts severally, and obtained soon afterwards the rule on the assignee for the benefit of creditors to turn over the property transferred to him, which has already been disposed of. So the record stood when, on December 11, 1901, the proposed amendment was applied for.

"It is plain from this review of the proceedings that, while begun at the same time and carried on together side by side, they have from the outstart been individual in character, directed against the two parties who were the subject of them severally, and not because or by virtue of the partnership relations. The fact that it existed could not be obscured, but it has not been made the basis of any action taken, the references to it being incidental only, and usually with the suggestion that it was not in any way involved. It is now proposed, however, to change this, and by a so-called amendment to recant and transform all that has been so far done. Instead of two distinct cases against each of the parties severally, we are to have practically one, which shall be effective against the partnership to which they happen to belong, the same as though it had been directed against it from the beginning. It is contended as a justification that both the partners having been brought into court of necessity the partnership has been also. If this be true, the amendment is proper, but otherwise not. All the authorities agree that in contemplation of the statute a partnership is a distinct entity, which requires a petition specifically directed against it, alleging an act of bankruptcy in

which it is expressly involved, and resulting in an adjudication of the partnership itself, irrespective of and in addition to any that may be made against the individual members. This is carried so far that without it—as it is held —there can be no effective discharge from the firm obligations, and—by some courts—that the proceedings against the partnership and the individual member are distinct cases, in which separate fees must be paid. In re Meyers, 2 Am. Bankr. R. 707, 96 Fed. 408; Id., 3 Am. Bankr. R. 260, 97 Fed. 757; In re Russell, 3 Am. Bankr. R. 91, 97 Fed. 32; In re Meyer, 39 C. C. A. 368, 98 Fed. 976; Green River Deposit Co. v. Craig (D. C.) 110 Fed. 137; In re Farley (D. C.) 115 Fed. 359; In re Barden (D. C.) 101 Fed. 553; In re Hale, 6 Am. Bankr. R. 35, 107 Fed. 432; In re Sanderlin, 6 Am. Bankr. R. 384, 109 Fed. 857; In re Winkens, 2 Nat. Bankr. R. 349, Fed. Cas. No. 17,875; In re Shepard, 3 Ben. 347, Fed. Cas. No. 12,754; Crompton v. Conkling, 9 Ben. 225, Fed. Cas. No. 3,407; Nutting v. Ashcroft, 101 Mass. 300.

"If this be so, whatever proceedings are instituted should disclose from the outstart the character which is proposed for them, and should maintain it to the close. If a partnership is intended to be reached, the petition and the proceedings under it should be appropriate to that end; if only the individual members, they should be governed by that circumstance. This is something more than a mere matter of form. It goes to the substance of the proceedings, involving, as it does, the question of notice and the rights of the parties to be affected.

"In the present instance, while the petitions were filed simultaneously and by the same creditor, and corresponding action has from time to time been taken in each, from the beginning there have been two distinct cases, every step in each being separate and individual in character. The acts of bankruptcy charged were individual, and did not touch the firm, which was not even named in that connection. Nor was this changed by the amendment introduced at the suggestion of the court, in which the assignment for the benefit of creditors was brought forward as an additional ground for the adjudication, that assignment being no more firm than individual. As opposed to the idea that the firm was intended to be brought in, the trustee, as we have seen, was appointed for the individual bankrupts only, and not for the partnership, and was chosen by the combined vote of both individual and firm creditors, although, if the partnership were in court, the choice, by the statute, would have been made by the firm creditors alone. Section 5b (act July 1, 1898, 30 Stat. 547, c. 541 [U. S. Comp. St. 1901, p. 3424]). Furthermore, at the time a discharge was applied for, attention was distinctly called by the objecting creditors to the fact that the firm, although possessed of large assets, had not been brought in, making the proceedings, as it was claimed, individual in scope, and not warranting a discharge from firm obligations.

"In the face of all this it would be a great stretch of authority, and one in no wise warranted by the proceedings as originally taken and consistently maintained, to go back and endeavor by a nunc pro tunc order to recast and remodel the whole. In the time which has elapsed, rights have been acquired and obligations incurred, as we may assume, on the strength of the record, as it has been made up, and they should not be invaded or disturbed. The bankrupts have sought and obtained their discharge in accordance therewith, which would possibly have been more vigorously and effectively opposed, if it was understood to extend to other than their individual obligations. I do not undertake to say that it does not, and the bankrupts themselves resist the amendment because, as they contended, it is an attempt to draw them again into bankruptcy on account of claims from which they have been fully released. But whatever may be the effect on the bankrupts themselves, the plain purpose of the application as disclosed at the argument is to reach back and overturn transactions long since closed, which cannot now be called in question, except by giving a new and materially different character to the proceedings, which, in form at least, they have not hitherto borne. The only basis for any such action that I can find is the suggestion that because all the parties who made up the firm have been brought into court of necessity the partnership has been also. And the only thing which lends any countenance to this is that provision

of the bankrupt law (section 5h) which declares that "in the event of one or more, but not all of the members of a partnership being adjudged a bankrupt the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged." This at first blush may seem to imply that when all of the members are adjudged the partnership property must be so administered. But the section is admittedly exceptional and negative, and we are hardly warranted in constructing an affirmative out of it. It merely preserves to an existing solvent partner the right to administer the affairs of the partnership, if he wants to, and it is not to be carried further by mere implication. It decides nothing with regard to the effect on the firm itself of distinct proceedings against those who compose it individually; and, as this very provision of the statute recognizes and proves, there is no inherent necessity that because both of the two partners have been thrown into bankruptcy, the partnership must be also. If the firm estate can be administered outside of the bankruptcy court, notwithstanding that one of the partners is in it, there is no reason why it cannot be also even though all the partners are there. There has to be the same marshaling of assets between the partnership and the individual creditors in the one case as the other, and if it can be successfully done with one partner in bankruptcy and the firm not, it can be just as well with all of the partners there. It seems to me, therefore, that the belated effort now made must fail. The original cast given to the proceedings, which has been recognized and maintained throughout, must continue to the end. If it is desired to reach the partnership after this long interval—although time may not altogether enter into the question—the only course to pursue that I can see is to file a new petition in a separate proceeding, and not attempt to ingraft it by amendment upon that which we have here.

"The petition of the Vulcanite Paving Company to have the firm of J. W. Mercur & Co. declared bankrupt nunc pro tunc is refused. The rule on Ezekiel Hunn, Jr., assignee for the benefit of creditors of James Watts Mercur individually, and of J. W. Mercur and Ulysses Mercur, as partners, trading as J. W. Mercur & Co., to turn over the property in his hands, is discharged as to the property of said firm, but made absolute as to the individual property of the said James Watts Mercur individually, so far as it has not been already administered."

From these views, it logically followed that, in the equity suit referred to, the assignments by the firm of J. W. Mercur & Co. to S. G. Purvis and to R. A. and J. J. Williams, respectively, should be sustained, and that the assignment to Ezekiel Hunn, Jr., as assignee for the benefit of creditors, should be upheld, so far as firm property was concerned. The orders, therefore, of the District Court in the matters discussed in said opinion, are hereby affirmed, and the decree of the Circuit Court in said suit is also hereby affirmed.