## In re PERLHEFTER et al.

### (District Court, S. D. New York.  March 24, 1910.)

1. BANKRUPTCY (§ 58*)—PAYMENTS—PREFERENCES.

Where a bank held the note of a firm for $5,000, given March 19, 1908, and renewed twice thereafter, and on September 16th following the continuing member paid the bank on the note $1,109.32 after the retirement of his partner and when the firm was hopelessly insolvent, and six days thereafter a petition in bankruptcy was filed against them, such payment was preferential.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*]

2. BANKRUPTCY (§ 58*)—ACTS OF BANKRUPTCY—DISCLOSURE.

A preferential payment by a bankrupt while insolvent, first disclosed at the reference before the master some seven months after its occurrence, was unavailable as an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*]

3. BANKRUPTCY (§ 58*)—ACTS OF BANKRUPTCY—PREFERENCES.

A bank having agreed to finance a purchase of shoes for the bankrupts, they executed their note for $20,000, agreeing to pay H. the bank's agent through whom the transaction was accomplished, $1,000 as guaranteed profits on the transaction. By August 20, 1908, the firm, which was then insolvent, had paid the note by depositing the proceeds of the sale of the shoes, and on September 16th paid H. $200 and gave him four notes for $200 each in settlement of the amount due him, and on September 22d bankruptcy proceedings were instituted against them. *Held*, that the payment to H. constituted an attempted preference and was an act of bankruptcy, though made out of the firm's account in the bank, notwithstanding the agreement between the firm and the bank that the proceeds of the sale of the shoes deposited should not be withdrawn until the bank was repaid in full.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*]

4. BANKRUPTCY (§ 58*)—PAYMENTS BY BANKRUPT—PREFERENCES.

Where a bank agreed to finance a purchase of shoes by the bankrupts, the bank paying the price and delivering the shoes to the bankrupts for sale, they depositing the proceeds without authority to withdraw the same until the bank was paid, deposits of such proceeds within four months prior to bankruptcy did not constitute preferences.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*]

5. CHATTEL MORTGAGES (§§ 8, 190*)—MORTGAGOR'S POWER OF SALE—PROCEEDS.

Where a bank furnished the money with which to purchase a consignment of shoes by the bankrupts, under an agreement that the shoes should be delivered to the bankrupts for resale but should remain the property of the bank, and that the proceeds should be deposited in the bank to the credit of the account until the bank's claim was paid, the transaction was not a pledge, but in the nature of a chattel mortgage, which was not invalidated under the New York state law because of the bankrupt's right to sell the property; they having agreed to pay the proceeds to the bank.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 20–22, 407–416; Dec. Dig. §§ 8, 190.*]

6. BANKRUPTCY (§ 58*)—PREFERENCES—PAYMENTS IN COURSE OF BUSINESS.

Payments made by the bankrupts to advertising agents in the nature of payments made to keep the bankrupts in business, not larger than payments which the firm had been previously making, could not be regarded as preferential, nor as constituting acts of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. BANKRUPTCY (§ 84*)—ACTS OF BANKRUPTCY—OCCURRENCE—TIME—AMENDED PETITION.
Withdrawals of money by partners from a firm not pleaded in an original bankruptcy petition were unavailable as acts of bankruptcy, where they occurred more than four months prior to the filing of an amended petition pleading them.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 84.*]

8. BANKRUPTCY (§ 57*)—ACTS OF PARTNERS—WITHDRAWAL OF FIRM FUNDS.
Where a partner of an insolvent withdrew from the firm's bank account $1,090 by a check which he had once deposited to his personal account in another bank, and thereupon drew a larger check on that bank and deposited it to the firm's account in its bank, the transaction did not constitute a withdrawal of firm funds nor an act of bankruptcy.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 57.*]

9. PARTNERSHIP (§ 183*)—INSOLVENCY—FIRM ASSETS.
Where a firm is insolvent, all its assets are held in trust for its creditors, and no transfer from one party to another can affect their rights.
[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 319–336, 348; Dec. Dig. § 183.*]

10. DOWER (§ 17*)—PROPERTY SUBJECT—FIRM PARTNERSHIP PROPERTY.
Real estate belonging to a firm is not subject to the dower of the continuing partner's widow until after firm creditors have been paid.
[Ed. Note.—For other cases, see Dower, Cent. Dig. § 62; Dec. Dig. § 17.*
What estates are subject to dower, see note to Black v. Elkhorn Mining Co., 3 C. C. A. 316.]

11. BANKRUPTCY (§ 58*)—PARTNER'S INTEREST—SALE—ACTS OF BANKRUPTCY.
A transfer of a partner's interest in an insolvent firm to the continuing partner for his note for $200, the transaction amounting merely to a formal way of retiring, the partner's interest, which was of no value, was not a fraud on the individual partner's creditors and did not constitute an individual act of bankruptcy.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*]

12. BANKRUPTCY (§ 58*)—ACTS OF BANKRUPTCY—PARTNERS.
A continuing partner's preference of firm creditors by the payment of firm assets, the firm being insolvent, was not a fraud on the partner's individual creditors and did not constitute an individual act of bankruptcy.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*]

13. BANKRUPTCY (§ 69*)—PARTNERSHIP—ADJUDICATION AFTER DISSOLUTION.
Under Bankruptcy Act July 1, 1898, c. 541, § 5a, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3424), authorizing adjudication against a firm, after dissolution and until final liquidation a firm may be declared a bankrupt separately from its individual partners as though it were an independent, legal person.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 69.*]

14. BANKRUPTCY (§ 69*)—PARTNERSHIP—INSOLVENCY OF PARTNERS.
A partnership may not be declared a bankrupt unless all of the partners are insolvent.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 69.*]

15. BANKRUPTCY (§ 69*)—PARTNERSHIP—INDIVIDUAL CREDITORS—RIGHT TO OBJECT.
Since it seems the individual estate of a partner will be administered in bankruptcy proceedings against the firm even without his adjudication, his creditors are entitled to object to an adjudication against the firm; but, where an individual creditor so intervenes, his rights are precisely those of the bankrupt.
[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 69.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**16. Bankruptcy (§ 91*)—Individual Partner—Failure to Appear.**
Where an individual creditor of a partner appeared and opposed an adjudication against him, but he failed to appear and produce his books and submit to an examination, required by Bankruptcy Act July 1, 1898, c. 541, § 3d, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3422), it would be presumed that he was insolvent.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 91.*]

In the matter of bankruptcy proceedings against John R. Perlhefter and Barnett Shatz, individually and as composing the firm of Perlhefter & Shatz. On motion to confirm a master's report, adjudging the firm and individual partners bankrupts. Confirmed as to the firm and as to Shatz individually, and denied as to Perlhefter individually.

This case comes up upon motion to confirm the report of the special master, to whom was referred the petition to adjudicate the respondents bankrupts, both individually and as constituting the firm of Perlhefter & Shatz. The petition was brought by the Broadway Trust Company, and the Twenty-Third Ward Bank of the City of New York, on the 22d day of September 1908. Subsequently, on the 21st day of October, 1908, Henry Klinger intervened as a party petitioner. An amendment was filed on October 22, 1908, after demurrer sustained to the first petition. The respondent Perlhefter has defaulted and the respondent Shatz has answered. However, one Grace C. Whitehall, an individual judgment creditor of Perlhefter, has intervened and answered as permitted by the statute.

The firm did business as auctioneers in the city of New York, and in the spring of 1908 entered into a contract for the purchase of 40,000 pairs of shoes from the Vaughn Monnig Shoe Company of St. Louis. In order to procure the purchase price for these shoes, they entered into a contract with the Fourteenth Street Bank, in which they agreed to open an account with the bank, into which the bank was to deposit the sum of $20,000, for which they were to give their note in the sum of $20,000. They likewise agreed that the bill of lading for the shoes should be given to the bank, and that the bank should charge to the account the purchase price of the shoes, should deliver to them possession, retaining title in itself, and that they should sell them and deposit the proceeds into the bank account, over which they should have no control till the bank was repaid in full. Instead of being made formally with the bank, the contract was made with one Heidelberg, as agent of the bank, and they agreed that Heidelberg should have $1,000, in addition as profits upon the transaction, which profits they guaranteed to him. The shoes were shipped and taken possession of by the alleged bankrupts, the bank paid the purchase price to the sellers out of the account in the name of the bankrupts in their bank, and took their note for $20,000. Subsequently, and on June 22d, the alleged bankrupts paid upon this note sufficient to reduce it to $17,085, and renewed the note for that sum, as the bank had agreed in the contract. From that date, June 22d, until August 20, 1908, the firm paid $17,085, with interest, or, in other words, completed payments on the note; all these payments being out of the proceeds from the sale of the shoes, and made by depositing several sums in the deposit as prescribed in the contract. On September 16th the firm likewise paid to Heidelberg $200 and gave him four notes of $200 each to make up the balance of his $1,000 profits. On July 20, 1909, Perlhefter made a deed of all his interest in the firm to Shatz and has disappeared since that time. He was served by publication. He received for his part of the interest in the firm Shatz's note for $272.66 at one year. Shatz conducted the business after the conveyance of Perlhefter until the filing of the petition against him on September 22, 1908, and on September 16, 1908, paid $1,109.32, upon a note of $5,000 to the Fourteenth Street Bank. The master has found the firm insolvent on July 20, 1908, and thereafter. Other facts are stated in the opinion.

Ira Leo Bamberger and Sidney Lowenthal, for petitioning creditors.

. Henry A. Rubino, for intervening creditor.

Sternberg, Jacobson & Pollock (Henry W. Pollock, of counsel), for bankrupts.

HAND, District Judge (after stating the facts as above). I think that the payment to Heidelberg of $200 in September, 1908, was a preferential payment; the firm being at that time concededly insolvent. It is said that the payment is so small that it cannot be inferred that there was any intention to prefer one creditor over the other. The size of the payment makes no difference if the requisite intent existed, but it does make a difference in determining whether or not the intent did exist. The circumstances of this payment, however, were such as lead me to agree with the master that in spite of its size the bankrupt must have intended to prefer Heidelberg. It was a part of his effort to pay Heidelberg the sum of $1,000, which the firm had guaranteed him under the contract; that guaranty constituting an obligation to pay which was a preference when the firm was insolvent. This Shatz tried to do by paying $200 in cash and the balance in four notes of $200 each. It was part, therefore, of an effort to pay him the full $1,000 and the intent of the payment of the $200 must be governed by the purpose of which the cash payment was a part. At the time the firm was hopelessly insolvent, as Shatz knew. It had obligations of over $23,000 and assets which could not have been worth more than $10,000. Indeed, when the receiver took possession six days thereafter, he got assets which realized scarcely more than half that sum. Besides Shatz's other payment on the same day is very significant. The Fourteenth Street Bank held a firm note for $5,000, given March 19, 1908 and renewed twice thereafter, and on the 16th of September, 1908, Shatz paid to the bank, on this note, $1,109.32. That this payment was preferential within section 3a2, the master finds, and I agree with him. Though it cannot be used in this proceeding as an act of bankruptcy, under the rule in Re Haff, 136 Fed. 78, 68 C. C. A. 646, having been first brought out at the reference before the master, some seven months after its occurrence, yet it quite plainly evinces Shatz's partiality toward the Fourteenth Street Bank, and confirms me in my decision that, by the payment of $200 to Heidelberg, the bank's agent, Shatz intended to prefer him over other firm creditors. Together these two payments constituted over one-fifth of the assets which he then had, and the conclusion is inevitable that he intended to prefer the bank.

. Two objections are urged: First, that the payment was made out of the account in the Fourteenth Street Bank and, therefore, under the case of New York County Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380, could not be a preference, and, the other, that the payment was in pursuance of a lien created under an agreement between the bank and the firm. As to the first objection, it is sufficient to say that New York County Bank v. Massey, supra, went upon the very theory that the deposit in the bank did not diminish the estate of the depositor, for he had a corresponding property in his

claim against the bank. Although the bank has a right upon his insolvency to set off one against the other, that is one thing, and it is another by his voluntary act to lose his control over his deposit and assign it to the bank. By that act he not only parts with his money, but parts with the corresponding obligation, and forever after puts the property out of his power.

So far as concerns the claim of a lien antedating four months and by virtue of the agreement of January 31, 1908, it is enough to say that the bank account was empty in August, and that the sum of $200, as well as the sum of $1,109, both drawn out by check on September 16, 1908, had been deposited within four months. It is not necessary, in that view of the situation, to determine whether the deposit created a lien or not, or at what time the bank obtained a proprietary interest in the money paid over. It certainly had no interest in the money four months previously. In all cases in which an agreement in equity antedating four months has been held valid, it affected some specific property, or at least property which had been substituted for other specific property, and which was in existence when a contract was made. A bank account is no such property except in so far as by the agreement it must be kept at a given sum. Therefore, I agree with the master that this is a sufficient act of bankruptcy on the part of the firm to justify an adjudication, provided the partners were insolvent—a matter with which I shall deal later.

I agree also with the master that the larger payments to the bank made in accordance with the contract and during the months of July and August are not preferences within the statute. This raises the question of whether the bank had in fact a valid lien upon the shoes and of the profits in the hands of the firm, under the cases of Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956, Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, and Sexton v. Kessler & Co., 172 Fed. 545, 97 C. C. A. 161. The contract between the bank and the firm attempted to preserve a lien upon the shoes and their proceeds, although they were to go into the possession of the firm itself. If that lien was not invalidated under any statute of the state of New York, the payments were not preferences; and the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) will not affect them. This is the precise effect of the decisions above cited. At common law the possession of the mortgagor did not invalidate the mortgage, and in this case it is quite obvious that the contract was in the nature of mortgage, and not of pledge, for title was reserved to the bank. The only statute of the state of New York which affects the validity of such a mortgage is that relating to chattel mortgages, and there is no claim that this contract was filed as a chattel mortgage. Had the contract been one by which the firm was to retain possession of the shoes until it had paid the bank's advances upon the bills of lading, the mortgage would have been good, under the well-settled law of the state of New York. Farmers' & Mechanics' Bank v. Logan, 74 N. Y. 568; Moors v. Kidder, 106 N. Y. 32, 12 N. E. 818; Drexel v. Pease, 133 N. Y. 129, 30 N. E. 732; Charavay & Bodvin v. York Silk Com-

pany (C. C.) 170 Fed. 819. In none of these cases, however, had the mortgagor power to sell the goods; but in each he was to retain them in his possession until the advances upon them had been paid, or at least he was to substitute their equivalent in goods in their place, if they were sold.

However, it is equally well settled under the law of the state of New York that, though a chattel mortgage which has been filed is void in the case the mortgagor has the right to sell the goods and dispose of the profits himself (Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885) Southard v. Benner, 72 N. Y. 424; Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678; Hangen v. Hachemeister, 114 N. Y. 566, 21 N. E. 1046, 5 L. R. A. 137, 11 Am. St. Rep. 691; yet, if the mortgagor agrees to pay the proceeds upon the mortgage, the lien is not invalid (Conkling v. Shelley, 28 N. Y. 360, 84 Am. Dec. 348). Under the contract in question although the firm was to have the right to sell the goods, it undertook to deposit all the proceeds in the bank account, and it bound itself not to withdraw any moneys from that account until the bank had paid itself in full. Thus the lien was valid, and the master was right in refusing to find these payments to constitute preferential payments. All the other acts of bankruptcy which the master has found except one were not set up in the petition, and it is too late now to allow any of them by amendment. In re Haff, 136 Fed. 78, 68 C. C. A. 646.

In regard to the payments to Carpenter & Corcoran, advertising agents, I agree with the master that the circumstances under which they were made precluded the idea that they were intended preferentially. They come within that class of payments which must be made in order to keep the bankrupts in business, and, as they were no larger than the payments which the firm had been making in the past, they cannot be made the basis of an act of bankruptcy.

The petition also alleges that Perlhefter withdrew certain sums of money from the firm, $4,111.64 of which was in the year 1908. It is sufficient, in regard to this, to say that the account shows that all these withdrawals were more than four months prior to the amended petition, and that the original petition did not set them up. The next act of bankruptcy alleged is the withdrawal by Perlhefter from the firm of $1,090 on July 13, 1908; but this check was at once deposited in his personal account in the Twenty-Third Ward Bank, and a check upon that bank for $1,250 was at once withdrawn and deposited in the firm account in the Fourteenth Street Bank. I agree with the master that there is no inference of a withdrawal to be taken from this of the firm funds by Perlhefter.

The remaining act of bankruptcy alleged is Perlhefter's conveyance to Shatz of his interest in the firm on July 20, 1908. As to this, I cannot quite agree with the master that it affected the rights of any of the firm creditors. The firm being at that time insolvent, as the master finds and as I agree, all the firm assets were held in trust for the creditors (Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370), and no transfer from one party to the other could affect their rights. Even

the firm realty on Winona street was not subject to the dower of Shatz's wife until after this trust had been executed and the firm creditors paid. Greenwood v. Marvin, 111 N. Y. 423, 19 N. E. 228. It might, however, have been a transfer in fraud of Perlhefter's individual creditors, and as such it must be considered. This would depend: First, upon whether Perlhefter supposed that there was any real value in his interest in the firm on dissolution; and, second, whether he supposed Shatz's·note had any value. If he supposed he had an interest in the firm, and that Shatz's note was valueless, it would have been a fraudulent transfer. If he supposed that Shatz's note had value, the circumstance of its disappearance might be sufficient to indicate that he was concealing his property. However, in view of all the circumstances, I cannot find that he concealed or transferred his individual assets with intent to defraud his individual creditors. It seems to me most likely that the whole matter was at most merely a formal way of his retiring and leaving the firm, and I do not believe that either party thought that Perlhefter's interest in the firm had any value at all.

Shatz committed no separate act of bankruptcy. His preference of firm creditors by the payment of firm assets did not affect his individual creditors, because the firm was insolvent, and no surplus could ever have come to the individual creditors in any event; but as I understand the ruling of the majority in Re Meyer, 98 Fed. 976, 39 C. C. A. 368, it is an individual act of bankruptcy if a partner as such is the author of the firm's act of bankruptcy, even though the act does not affect his individual assets. In view of the joint administration of the individual assets in any case along with the firm assets, the matter is nearly academic; but it will have some substantial results if Shatz ever applies for a discharge.

Two questions remain: First, whether the absence of Perlhefter and his failure to produce his books threw upon his intervening individual creditor the burden of proving insolvency; and, second, whether acts of bankruptcy committed by Shatz after the retirement of Perlhefter from the firm are acts of bankruptcy of the firm. Upon the second question, after In re Meyer, 98 Fed. 976, 39 C. C. A. 368, In re Grant (D. C.) 106 Fed. 496, In re Kersten (D. C.) 110 Fed. 929, In re Mercur, 122 Fed. 384, 58 C. C. A. 472, and Mills v. Fisher, 159 Fed. 897, 87 C. C. A. 77, there can be no further doubt but that the firm may be put in bankruptcy separately and as though it was an independent legal person. The statute (section 5a) specifically provides for adjudication after dissolution and until final liquidation.

Upon the first point it must be first observed that all the partners must be found insolvent. Vaccaro v. Security Bank, 103 Fed. 436, 43 C. C. A. 279; Tumlin v. Bryan, 165 Fed. 166, 91 C. C. A. 200, 21 L. R. A. (N. S.) 960. Moreover, since the individual estate of Perlhefter will be administered even without his adjudication under In re Meyer, supra, his creditor may have the same right to object as though the question were of individual adjudication. On the other hand, however, I think that, even if the facts are not strictly in point the reasoning of In re West, 108 Fed. 940, 48 C. C. A. 155, controls

this case. It is quite true that there solvency was an affirmative defense, while here it was a necessary allegation of the petition; but I do not believe that Congress meant an intervening creditor to be in a better position to combat adjudication than the bankrupt was, or that the petitioner's case was to become more difficult if a bankrupt absconded than if he stayed and fought. There is every reason to construe the act as putting the intervener in precisely the same position as the bankrupt, and no reason to the contrary.

Therefore, section 3d applies, and Perlhefter must be presumed insolvent.

In this case there are all the elements necessary for an adjudication against the firm, and Shatz, and I agree with the master that an adjudication should enter against them. I cannot, however, find any acts of bankruptcy by Perlhefter, individually, and therefore I do not confirm the recommendation of the master's report as to him individually. Let an adjudication be entered against the firm and Shatz individually, upon amending the petition so as to set up the payments to Heidelberg as a preference, not a transfer. I do not understand In re Haff, supra, to prevent an amendment by which the characterization may be changed of a transaction substantially set forth in the petition. I will allow an amendment, therefore, in that respect.

The intervening creditor has attempted to prevent the adjudication of the firm, and in that she has been unsuccessful. She has been successful, however, in preserving her judgment from discharge because Perlhefter is not adjudicated, and I do not think I should put costs upon her, even though I suspect that her motive was solely to prevent the firm adjudication. Against the bankrupts, however, and the estate, costs should be taxed.